Arnaldo **HERNANDEZ–HERNANDEZ,**
Petitioner, Appellant,

v.

**UNITED STATES of America,**
Respondent, Appellee.

No. 89–1882.

United States Court of Appeals,
First Circuit.

Heard April 3, 1990.
Decided May 31, 1990.

Gail S. Strassfeld, Boston, Mass., with whom Silverglate, Gertner, Fine & Good, Boston, Mass., were on brief, for petitioner, appellant.

Juan A. Pedrosa, San Juan, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., and Jeanette Mercado Rios, Asst. U.S. Atty., Old San Juan, P.R., were on brief, for respondent, appellee.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant Hernandez–Hernandez appeals from the denial of his motion under 28 U.S.C. § 2255 to set aside his guilty plea and vacate his 99–year sentence for the crime of conspiring to violate the rights of a federal witness. Appellant, who originally had pleaded not guilty, argues that the district judge who accepted his guilty plea and later denied his motion to vacate it erred in (1) failing to hold a competency hearing *sua sponte* at his change of plea hearing, thereby depriving him of his due process rights; (2) failing to hold an evidentiary hearing to consider his claims of ineffective assistance of counsel; and (3) failing to determine both a factual basis for the plea and whether appellant understood the nature of the charge to which he pleaded guilty. We conclude that a competency hearing was not required in these circumstances, but that the court should have conducted an evidentiary hearing on the ineffective assistance claims. We therefore remand for such a hearing. We do not address the third issue because it was not raised in the district court.

### Competency Hearing

The question of appellant's competency to offer a valid guilty plea surfaced early in his change of plea hearing, which was held in March 1986. Shortly after appellant stated that he was not taking any medication, the prosecutor informed the court that appellant had a history of psychiatric treatment. The defense attorney added that appellant had received "extensive" treatment since he was seven for "general" mental disorders but could not further define either appellant's mental condition or any medication currently prescribed. Appellant could say only that he was taking a white pill for his nerves while in custody.

At this point the court, obviously unsatisfied with the information so far provided and dubious whether the plea proceeding should continue, recessed it so that appel-

lant, his lawyer, and his family could talk together. The court immediately turned to a plea proceeding in a companion case (Cancel). The duration of this proceeding was not noted but the transcript of it occupied 24 pages. At its conclusion, the court without recessing resumed consideration of appellant's request for a change of plea. Appellant's attorney stated that appellant claimed to have had a nervous condition all his life and that the family had not as yet made treatment records available. Appellant then said that he had taken one "Ativan" pill at 8 a.m. for his nerves, that he had received psychiatric treatment from age 7 to age 13 for both his nerves and "learning," and that he also had received psychiatric treatment two or three years ago when his wife died. His attorney then told the court that he had intended to use records of appellant's psychiatric treatment not for an insanity defense but "to use the fact that this man was a very nervous person to go into the aspect of intent of the defendant."

The court then queried appellant about his desire to plead guilty, his opportunity to discuss the case with his attorney, his satisfaction with his attorney, his understanding of his right to a trial by jury and the various other rights that such a trial would preserve and that a guilty plea would waive. The court then read Count One of the indictment, explained the maximum penalty, and elicited answers that appellant understood the requirement of criminal intent, that he had signed a plea agreement, and that there had been no threats, promises, or predictions. The hearing closed with appellant giving his version of what he did, the prosecutor supplementing the summary of evidence he had made in the plea proceedings of the companion case, final questions being asked of appellant about whether he disagreed with any description of what he did, the court's own finding that appellant was competent, and the court's acceptance of the plea.

When the district court later considered appellant's § 2255 motion, it had available three documents in addition to the above testimony. One was a report from a Puerto Rican mental health center indicating that appellant had received outpatient treatment consisting of a prescribed daily dosage of Mellaril tablets, beginning in 1966 and ending in 1983. It also included a brief diagnostic notation, "with mental deficiency." A second document was a letter indicating that appellant visited a New York mental health center for outpatient services from September 13, 1983 to November 8, 1983. The third document was the report of a psychiatric evaluation performed at the order of the district court a short time after the change of plea proceeding. It described appellant as "coherent and relevant." It found no evidence of hallucinations or depression, good "orientation" and intellectual resources "within normal limits of 95." It concluded:

> This individual understands the Court proceedings, can help his lawyer and understands the responsibility of having declared himself guilty of the charges and the reasons why he declared himself guilty.

A court is required to hold a competency hearing *sua sponte* whenever there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241. *See also Figueroa–Vazquez v. United States*, 718 F.2d 511, 512 (1st Cir.1983). In considering whether a competency hearing should have been held during the change of plea hearing, the district court appropriately noted appellant's coherent answers to questions, citing *Bolius v. Wainwright*, 597 F.2d 986, 990 (5th Cir.1979), and a lack of " 'evidence that the medication affected [appellant's] rationality,' " citing *United States v. Pellerito*, 878 F.2d 1535, 1542 (1st Cir.1989). Such evidence as there was of drug use and psychiatric treatment falls well within the reach of our holding in *Figueroa–Vazquez*, 718 F.2d at 512, that "these bits of information did not constitute 'reasonable cause.' " As in that case, we can say here:

To find "reasonable cause" here would come close to requiring district courts to order competency hearings *sua sponte* in every case where a defendant has some history of psychiatric treatment and, even vaguely, mentions the problem.

*Id.*

We therefore conclude that the district court did not err in failing to find a due process violation based on its earlier failure to hold a competency hearing *sua sponte* at appellant's change of plea hearing.

### Evidentiary Hearing

Appellant argued in his § 2255 motion that his guilty plea was not knowing and voluntary because of his attorney's ineffective assistance, which manifested itself in two different ways. *See Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (ineffective assistance of counsel may undermine the voluntariness of a guilty plea). *See also Panzardi–Alvarez v. United States,* 879 F.2d 975, 982 (1st Cir.1989). First, he claimed that his lawyer should have investigated more fully his psychiatric history, presumably so that the lawyer would have been equipped to use his mental problems in his defense. Second, appellant claimed that his lawyer assured him that if he pleaded guilty, he would receive a ten-year sentence. On appeal, appellant claims that the district court erred in refusing to hold an evidentiary hearing on these claims of ineffective assistance.

In rejecting appellant's motion, the district court briefly noted that it saw no need for an evidentiary hearing "because petitioner's claims are conclusively refuted by documents of record, particularly the transcript of petitioner's change of plea hearing."

▆ We have no difficulty in agreeing with the district court with respect to the lawyer's failure to dig more deeply into appellant's psychiatric problems. Passing the question whether counsel's actions or inaction met standards of reasonableness, the transcript and other documents of record conclusively show that there was no "reasonable probability that, but for coun-sel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 370. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

The information revealed during and subsequent to the change of plea hearing shows that appellant and his counsel properly eschewed an insanity defense, and there is no basis for believing that a lawyer previously equipped with all of that information would have counseled his client otherwise. The possibility of mounting a defense based on a mental defect negating intent also was not sufficiently likely to have influenced appellant's decision—at least in this circuit and on this record. *See United States v. White,* 766 F.2d 22, 24–25 (1st Cir.1985); *United States v. Kepreos,* 759 F.2d 961, 964 and n. 4 (1st Cir.1985). *But see United States v. Twine,* 853 F.2d 676, 678–79 (9th Cir.1988). Even the application of a more relaxed standard would have fallen far short of providing a viable defense under the facts of this case. *See United States v. Pohlot,* 827 F.2d 889, 903–07 (3d Cir.1987). Thus, the record shows no "reasonable probability" that appellant's decision to plead guilty was linked to the extent of his lawyer's knowledge of his mental history.

▆ The alleged promise of a 10–year sentence cannot be disposed of so easily. It is based on affidavits describing alleged conduct outside the courtroom. Appellant's affidavit states in relevant part, "My attorney (Edwin Quinones) told me that if I pled guilty, I would receive a ten (10) year sentence." Five other persons submitted identical affidavits averring, "That on or about March 10, 1986, approximately in the afternoon hours, that Arnaldo Hernandez's attorney, Edwin Quinones, told me (I was in a group of people attending A. Hernandez's court proceeding) that he talked with the Assistant U.S. Attorney and that he would receive a ten (10) year sentence if he pled guilty. This all took place on the afternoon of 3/10/86 or thereabouts outside the federal courtroom in San Juan, Puerto Rico."

The district court considered the five affidavits, which it termed "form letter" affidavits, but concluded that the appellant's series of satisfactory answers to the court's questions at the change of plea hearing enjoyed a presumption of truthfulness that had not been overcome. It added that it found no credibility in appellant's claim, citing *United States v. Pellerito*, 878 F.2d 1535, 1538–39 (1st Cir.1989).

It is true that appellant repeatedly denied, both in his written Petition to Enter Plea of Guilty and in his sworn testimony, that any promises or predictions as to sentence had been made to him. He also asserted his understanding that the sentence could be for any term of years or life. It is also the case that appellant did not begin his efforts to set aside his sentence for a year and eight months. And, as the court noted, the affidavits were cast in the same form. But, before a court may dispose of a motion filed under 28 U.S.C. § 2255 without an evidentiary hearing, several hurdles must be cleared.

The statute itself erects the first barrier: a hearing is necessary "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The Supreme Court added a gloss to this text in *Machibroda v. United States*, 368 U.S. 487, 494–95, 82 S.Ct. 510, 513–14, 7 L.Ed.2d 473 (1962), where petitioner alleged that the prosecutor had promised a sentence not exceeding twenty years if he pleaded guilty. The Court's words are peculiarly appropriate here:

This was not a case where the issues raised by the motion were conclusively determined either by the motion itself or by the "files and records" in the trial court. The factual allegations contained in the petitioner's motion and affidavit, ... related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.

... The Government's contention that [petitioner's] allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence.

Our own more recent formulation is somewhat more amplified:

To dismiss a § 2255 motion without a hearing, the allegations set forth by the petitioner "must be accepted as true except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."

*Myatt v. United States*, 875 F.2d 8, 11 (1st Cir.1989) (quoting *United States v. Mosquera*, 845 F.2d 1122, 1124 (1st Cir.1988)).

We also have recognized, as the district court noted, that statements made by an accused in a change of plea proceeding are accorded a presumption of truthfulness, which is not overcome in the absence of "credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt*, 731 F.2d 75, 80 (1st Cir.1984). We illustrated the point by noting that evidentiary hearings on claims of attorney misrepresentations have been granted "only when the allegations were highly specific and usually accompanied by some independent corroboration." *Id.* at 80 n. 5.

Applying these criteria, we draw the following conclusions. First, we cannot say that appellant's allegations are conclusively contradicted by the record. Second, whatever may be our skepticism concerning the representation allegedly made by appellant's counsel at the time of the change of plea hearing, we cannot say that the allegation was inherently incredible in light of *Machibroda*, where a very similar allegation of attorney misrepresentation was made. Third, we cannot say that the allegation was insufficiently specific. The date and time of the representation, the place (in the case of the five affidavits), and the specific length of time to be served in exchange for a plea of guilty were clearly set forth. In specificity this seems comparable to the alleged representations in *United States v. Giardino*, 797 F.2d 30, 31

(1st Cir.1986), where the defendant sought to set aside his guilty plea on the ground that his lawyer had lied to him about incriminating statements made by a co-defendant. *See also United States v. Unger*, 665 F.2d 251, 253–54 (8th Cir.1981). Finally, as in *Giardino*, there is corroboration. Although the five affidavits, besides appellant's, are short and phrased in identical language, this does not seem a sufficient basis for rejecting an evidentiary hearing. The fact is that all five persons apparently were together and allegedly heard the attorney's representation. To insist that each affiant use different words is indeed to elevate form over substance. The salient point is that each of the five is apparently willing to testify under oath to a specific conversation. We conclude that the court erred in summarily dismissing appellant's motion. As we said in *Giardino*, 797 F.2d at 32–33:

> The district court must take further steps to determine the truth and significance of what is alleged. *See Blackledge v. Allison*, 431 U.S. [63] at 80–83, 97 S.Ct. [1621] at 1632–34 [52 L.Ed.2d 136 (1977)]; Rules 5–8, Rules Governing § 2255 Proceedings. Nothing we have written should be taken as suggesting that [appellant's] claims are true. We simply point out that his case cannot be dismissed without deciding whether they are true or false.

### Factual Basis

■ Appellant also raises on appeal the contention that his plea of guilty must be vacated because the district court failed to "determine that the defendant understands ... the nature of the charge to which the plea is offered," in violation of Rule 11(c)(1) of the Federal Rules of Criminal Procedure, and failed to "make such inquiry as shall satisfy it that there is a factual basis for the plea," in violation of Rule 11(f). Specifically, appellant argues that while there was much colloquy concerning the killing of the government informant, Avelino Cabrera Diaz, the charge against appellant was that he conspired to deprive Cabrera of his federally protected right to be a witness. Appellant asserts a total ab-

sence of evidence that appellant acted with such a specific intent or knew of Cabrera's status, citing *United States v. Coleman*, 811 F.2d 804, 808 (3d Cir.1987).

Appellant concedes that this claim was never raised below and recognizes that our general rule is not to consider claims raised for the first time on appeal. We have applied this proposition in well over a hundred cases since *Johnston v. Holiday Inns*, 595 F.2d 890 (1st Cir.1979). We therefore are confined to determining whether or not this is a case " 'where a gross miscarriage of justice would occur' .... [and where] the new ground [is] 'so compelling as virtually to insure appellant's success.' " *Id.* at 894 (citations omitted).

We begin this restricted inquiry by noting the obvious, that if this claim is dismissed for failure to raise it in the district court, there is no preclusive effect arising from our decision. Going beyond this point requires us to survey the record of the Rule 11 hearing, always bearing in mind that we are not ruling on the merits of the claim but only searching for rank injustice or overwhelming evidence of error.

This is how the record appears. Count One of the indictment alleged that co-defendant Panzardi–Alvarez, appellant, and five other co-defendants conspired to deprive Cabrera of his federally protected right to give information and to testify in federal proceedings concerning Panzardi in such manner as led to Cabrera's death. In the Petition to Enter a Plea of Guilty, appellant affirmed that his attorney explained the elements of the offense. Appellant also subscribed a plea agreement in which the first of five paragraphs describes the conspiracy to deprive Cabrera of his right to be a witness.

The Rule 11 colloquy, as described above, began with extensive discussions of appellant's mental condition and psychiatric records. The proceedings were suspended while counsel could meet with family members, who apparently were present, and the court proceeded with the petition of co-defendant Nestor Manual Cancel. Upon reconvening appellant's hearing, after fur-

ther discussion of appellant's competency, the court read from Count One of the indictment, asked appellant if he was aware of the charge, alluded to the possibility of a life sentence, and asked if there had been any threats, promises, or predictions. Upon receiving satisfactory answers, the court asked what it was that appellant did.

Appellant responded:

I was at Sonia's house with Hector and Mr. Polo Panzard [sic] arrived at that time and he told me we had to arrest Mr. Abelino [sic] Cabrera Diaz which Sonia then stated that he was going to arrive in a couple of minutes. Mr. Panzardi went into the house and I stayed outside.

Then Mr. Abelino [sic] Cabrera Diaz arrived and I proceeded to arrest him. When they went to blows Mr. Abelino [sic] Cabrera tried or achieved in taking away Mr. Panzardi's weapon. When he pointed the weapon to me I proceeded to fire on him.

. . . .

THE COURT: Do you know why Mr. Panzardi asked you to arrest Mr. Abelino [sic] Cabrera Diaz?

THE DEFENDANT: No.

At this point, after an off-the-record discussion, the court asked the prosecutor if "the summary of the evidence that you gave before against [appellant would] be the same?" The prosecutor answered in the affirmative, adding only that the bullet holes were in Cabrera's back and that the government's evidence was that Cabrera "was standing with his hands in the air with [appellant] pointing the gun at his back." The prosecutor concluded by characterizing Count One as charging appellant with "depriving [Cabrera] of his right to be a witness." After a statement from defense counsel that he was "aware of the relevant elements of specific intent as the jist [sic] of this conspiracy," the court asked, "[Appellant], did you hear the summary which the U.S. Attorney gave us? Is this what you did?" Appellant answered, "Yes."

Exceedingly relevant to our present inquiry is the immediately following interven-

tion by appellant's counsel, which takes on meaning only after considering its referent.

MR. QUINONES: Your Honor, may I interject that I had agreed with [the prosecutor] that the proffer with regard to the evidence that they have as to [appellant] does not in anyway put him where the body was—

. . . .

MR. HERNANDEZ: Just to satisfy Mr. Quinones our evidence would also show that we have no evidence to indicate that [appellant] would want to cut up the body.

MR. QUINONES: Thank you very much.

THE COURT: Is there anything Mr. Hernandez that you disagree with as to what has been said here as to your participation in the case?

THE DEFENDANT: No.

The significance of this rather opaque exchange lies in its indication that counsel and appellant were present during the presentation of evidence in the change of plea hearing of co-defendant Cancel, or at least that part of it which not only detailed what happened at the scene of the crime but the purpose of the conspiracy and the witness status of the victim. Over half way through the Cancel hearing, at page 14 of the 24–page transcript, the court asked the prosecutor to give a summary of the evidence that would be presented at trial.

The prosecutor began by describing Cabrera's role as a government informant and witness who had provided information to both the Drug Enforcement Administration and the Federal Drug Task Force and helped secure indictments against some eleven people. The trial of one of these, co-defendant Panzardi, was scheduled to begin on November 12. In the words of the prosecutor,

The Government's evidence would show that Mr. Panzardi had a contract to kill [Cabrera] because his [sic] providing information to the Government because of the fact that he was going to testify against him in either criminal case number 116 or in criminal case 117 and that

he had testified against Mr. Panzardi in the grand jury.

Then followed a narration of the events of the night of November 9: the lying in wait for Cabrera, who was expected to visit one Sonia, appellant being one of the first two defendants to arrive; the removal of children and other family members, leaving appellant alone with Sonia; the arrival of other defendants who "indicated to [Sonia] that [Cabrera] was a federal informant who had caused Mr. Panzardi much of his problems"; the escorting of Cabrera to Sonia's house; Panzardi's confronting Cabrera with a submachinegun, a struggle, and appellant's sticking a handgun into Cabrera's back, then firing of shots; appellant's helping load the body into his truck and driving off.

What is most significant for present purposes are the prosecutor's closing words, which immediately followed the above description of the crime:

> The Government would show thereafter that the body of the witness, Avelino Cabrera–Diaz was found with his head cut off, his hands cut off, the feet cut off and what was left of the torso was burned.

It was apparently this evidence from which defense counsel sought to distance his client, eliciting the prosecutor's statement that no evidence connected appellant with postmortem butchery. But the implication is that counsel and appellant were indeed present to hear the prosecutor's earlier remarks, including the specific references to the purpose of the conspiracy and the witness status of the victim. If so, it follows that appellant's affirmative answer to the court that the prosecutor's summary accurately described what he did could be read to cover the same ground. We do not decide this today. We merely decide that our survey of the record, and reasonable inferences therefrom, persuade us that this is not the rare case where we should review an issue raised for the first time on appeal.

The claim of failure to determine voluntariness and a factual basis for appellant's guilty plea is unavailing; the case is re-

manded to the district court for further proceedings in accordance with this opinion.

*Vacated and remanded.*