Theodis WATKINS, Petitioner, Appellant,

v.

Joseph PONTE, Respondent, Appellee.

No. 92–1864.

United States Court of Appeals, First Circuit.

Heard Dec. 10, 1992.

Decided March 3, 1993.

Joseph F. Shea, with whom Nutter, McClennen & Fish, Boston, MA, was on brief, for petitioner, appellant.

Robert N. Sikellis, Asst. Atty. Gen., Criminal Bureau, with whom Scott Harshbarger, Atty. Gen., Boston, MA, was on brief, for respondent, appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Circuit Judge.

Appellant, Theodis Watkins, appeals from the district court's dismissal of his petition under 28 U.S.C. § 2254. We affirm.

## FACTS

Watkins was convicted of first degree murder on June 23, 1976 and sentenced to life in prison.[1] In 1979, he filed a *pro se* petition for a writ of habeas corpus ("1979 Petition"). The 1979 Petition was "mixed"; it presented both exhausted and unexhausted claims for relief.[2] The magistrate recommended dismissal of the 1979 Petition and the district court affirmed after appellant failed to challenge the magistrate's recommendations within the prescribed ten day period. Watkins sought a certificate of probable cause for appeal, Fed.R.App.P. 22(b), on the two claims that had been exhausted. This court denied the request and dismissed the appeal.

Watkins unsuccessfully pursued his unexhausted claims in state court during the 1980s. In 1990, he filed the current petition for writ of habeas corpus ("1990 Petition") alleging three grounds that were not raised in the 1979 Petition.[3] Relying on *McCleskey v. Zant,* — U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the district court dismissed the first two grounds as an abuse of the writ and ruled against Watkins on the third. Watkins now appeals only the two arguments dismissed for abuse of the writ. As appellant has failed to raise the third ground on appeal, we treat it as waived. *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 352 (1st Cir. 1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

## DISCUSSION

In *McCleskey,* the Supreme Court used the cause-and-prejudice standard applicable

---

1. *See Commonwealth v. Watkins,* 373 Mass. 849, 370 N.E.2d 701 (1977), for the facts underlying Watkins' conviction.

2. The 1979 Petition asserted the following grounds for relief: (1) failure to sequester witnesses; (2) inadequate instructions on manslaughter; (3) inadequate instructions on malice; (4) failure to direct a verdict for Watkins based on defective jury charges that shifted the burden of proof to the petitioner; (5) improper confinement to the dock during trial. At the time of filing Watkins had only exhausted the first two grounds.

3. The amended 1990 Petition sought relief based on (1) the inadequacy of the trial court's instruction on reasonable doubt; (2) the inadequacy of the court's instruction on the distinction between first and second degree murder; and (3) the inadequacy of the trial court's instruction on malice.

   Counsel for Watkins in this matter was appointed after Watkins filed his initial *pro se* petition in the 1990 Petition. Counsel did not represent Watkins in any of the earlier proceedings.

to cases of procedural default, *see, e.g., Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), as part of its analysis of the problems arising from successive petitions for habeas corpus. The Court stated that for a petitioner

> [t]o excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. . . . If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

—— U.S. at ——, 111 S.Ct. at 1470. Earlier, in *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982), the Supreme Court perceived that the multitude of piecemeal habeas petitions unduly burdened the federal courts. *Rose* sought to consolidate the issues for appeal in one proceeding in each court system by establishing the "total exhaustion" rule. But it also preserved immediate access to the federal courts on exhausted issues, provided the petitioner consciously wished to risk losing an opportunity for federal review of other claims. 455 U.S. at 510, 102 S.Ct. at 1199. Thus, *Rose* required that district courts entertaining mixed habeas petitions offer petitioners an explicit choice to proceed on exhausted claims or delay federal review to bring all claims once exhausted. *Id.*

The Commonwealth contends that Watkins' 1990 Petition falls squarely within *McCleskey* because back in 1979 Watkins chose to appeal only the two exhausted claims presented in the 1979 Petition, and, therefore, bore the "risks [of] dismissal of [his] subsequent federal petition[ ]" for abuse of the writ. *Rose*, 455 U.S. at 510, 102 S.Ct. at 1199; *McCleskey*, —— U.S. at ——, 111 S.Ct. at 1467. The Commonwealth argues further that Watkins abused the writ by failing to assert the reasonable doubt and the second degree murder claims in the original 1979 Petition since Watkins did not allege, nor could he, that he lacked a substantial basis for those claims in 1979.

*See McCleskey*, —— U.S. at ——, 111 S.Ct. at 1468.

Watkins counters that the merits of the two exhausted claims in the 1979 Petition were never properly before the court of appeals because Watkins was never presented the choice between dismissal and continuing only with exhausted claims as required by *Rose*, 455 U.S. at 510, 102 S.Ct. at 1199. According to Watkins, the district court effectively made the choice for him by dismissing the petition as mixed. On appeal, this court refused to issue a certificate of probable cause and dismissed the appeal. Thus, argues Watkins, there can be no abuse because the 1990 Petition is the first petition properly before the court.

We agree with the Commonwealth that we reviewed the merits of two exhausted claims in the 1979 Petition. *Watkins v. Callahan*, Misc. No. 80–8063 (1st Cir. Nov. 20, 1980). When we decided that appeal, the Supreme Court's "total exhaustion" rule of *Rose* had not yet been decided. This Circuit, and seven others, did not condition district court review of mixed habeas petitions on exhaustion of all state court claims. *See Rose*, 455 U.S. at 513 n. 5, 102 S.Ct. at 1201 n. 5 and cases cited therein; *Miller v. Hall*, 536 F.2d 967, 969 (1st Cir. 1976); *Katz v. King*, 627 F.2d 568, 574 (1st Cir.1980). In *Niziolek v. Ashe*, 694 F.2d 282, 287 (1st Cir.1982), we held that individuals "who filed mixed petitions before *Rose* issued should not be penalized for having followed the procedure that prevailed at the time." That practice permitted the court to rule on exhausted claims, while dismissing unexhausted claims, because "it would be indefensible to refuse to consider a meritorious claim merely on the grounds that it might eventually be mooted by a favorable state court ruling on his appeal of unrelated issues." *Miller*, 536 F.2d at 969. Providing prompt relief to individuals who filed mixed petitions obviously did not contemplate summarily rejecting subsequent petitions.

We followed the pre-*Rose* procedure with respect to the 1979 Petition. We dismissed the merits of the exhausted claims and reserved consideration of the unexhausted

claims. Thus, Watkins reasonably assumed that we would consider his unexhausted claims in a subsequent petition once he had exhausted them. Because we considered the 1979 Petition on the merits, however, we must use it as the bench mark for the abuse-of-the-writ analysis.

■ In this context, *McCleskey's* cause-and-prejudice standard plainly requires the dismissal of claims raised in the 1990 Petition that Watkins failed to raise in the 1979 Petition.[4] To justify the failure to raise a claim, a petitioner must demonstrate that some "external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented [him] from raising the claim." *McCleskey,* — U.S. at —, 111 S.Ct. at 1472. A petitioner must also demonstrate that he made a "reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *Id.* at —, 111 S.Ct. at 1472. This test forms the cause prong of the *McCleskey* test and Watkins failed to meet it. Although Watkins' counsel asserted that Watkins could meet both prongs at the hearing before the district court on the 1990 Petition, he never explained how. On appeal, Watkins did not raise the argument. We conclude that the reasonable doubt and second-degree murder challenges to his conviction were available to Watkins at the time of the 1979 Petition and that he has shown no cause for failing to raise them.

■ Finally, Watkins' argues that even if the 1990 Petition is an abuse, a "fundamental miscarriage of justice would result" from refusing to consider his new claims. This exception to *McCleskey* is narrow, as it is contemplated only for "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *Id.* at —, 111 S.Ct. at 1470. In describing this exception, the *McCleskey* court suggested that the

petitioner must supplement the constitutional violation with a "colorable showing of factual innocence." *Id.* at —, 111 S.Ct. at 1471 (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)); *see also Wise v. Fulcomer,* 958 F.2d 30, 34 (3d Cir.1992).

■ Watkins' case falls outside this narrow exception because he did not squarely raise the "fundamental miscarriage of justice" issue before the district court. While he claims that the argument was implicit in his Memorandum in Support of Petition for Writ of Habeas Corpus, we find this insufficient in light of the fact that Watkins did not argue the exception at the hearing before the district court when it ruled against him on the basis of *McCleskey.*[5]

■ "This circuit religiously follows the rule that issues not presented to the district court cannot be raised on appeal." *Ouimette v. Moran,* 942 F.2d 1, 12 (1st Cir.1991) (same); *Knight v. United States,* 611 F.2d 918, 920 n. 2 (1st Cir.1979) (rule applied in habeas context). Only in cases in which "a gross miscarriage of justice" would occur and in which "the new ground [is] so compelling as to virtually insure appellant's success" can we consider arguments that were not raised below. *Hernandez–Hernandez v. United States,* 904 F.2d 758, 763 (1st Cir.1990) (quoting *Johnston v. Holiday Inns,* 595 F.2d 890, 894 (1st Cir.1979)). To determine whether a gross miscarriage of justice would occur if we do not consider the *McCleskey* exception, we must look at appellant's claims.

Watkins first challenges the trial court's jury instructions on reasonable doubt. He claims that four aspects of the instructions, when taken together, derogate the Commonwealth's burden of proof. First, the trial court stated that reasonable doubt was not "foolish" or "fanciful" doubt. Second, it suggested that reasonable doubt was something less than a "mathematical or an artificial certainty." Third, it pre-

---

4. Despite the age of this case there is no problem as *McCleskey* applies retroactively. *Andiarena v. United States,* 967 F.2d 715, 717–18 (1st Cir.1992).

5. We note that Watkins also failed to object to the allegedly infirm instructions at the original trial. *Commonwealth v. Watkins,* Crim. Action No. 95–794, slip op. at 3–4 (Superior Ct. July 7, 1989).

sented its instruction on essential elements of a crime, as opposed to collateral issues, in a confusing manner. Finally, the trial court stated that "the average layman's version of 'reasonable doubt' would come pretty close to what the law in much more technical language says."

■ While criminal defendants often challenge instructions on reasonable doubt, "our experience has been that even imperfect formulations usually meet constitutional requirements when viewed in the context of the entire charge." *Lanigan v. Maloney,* 853 F.2d 40, 45 (1st Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). We must "tolerate a reasonable range of expression, some or even much of which may not suit our fancy," unless we impose pattern jury instructions. *Bumpus v. Gunter,* 635 F.2d 907, 910 (1st Cir.1980), *cert. denied,* 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207 (1981). In this case, the trial judge's instructions on reasonable doubt were less than perfect. They were confusing in parts, but do not rise to the level of constitutional infirmity.

■ The trial court's statement with respect to "foolish" or "fanciful" doubt came close to the instruction we censured in *Dunn v. Perrin,* 570 F.2d 21, 24 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978). In *Dunn,* the trial court erred by shifting the burden to the defendant. It stated that reasonable doubt was doubt that could not "readily or easily [be] explained away, but rather such a strong and abiding conviction as still remains after careful consideration of all the facts and arguments...." *Id.* In this case, the trial court did not shift the burden to defendant. It stated that reasonable doubt was "a doubt that resides in the mind of a reasonable man who is earnestly seeking the truth. It is not a foolish doubt. It is not a fanciful doubt. It is not a doubt in the mind of a juror who is simply seeking an excuse to acquit a defendant." While a poor formulation, this instruction essentially asked the jurors to seriously pursue the truth. Appellant's reliance on *Dunn* is misplaced.

■ With respect to the other errors alleged, it is true that the trial judge indicat-

ed that a mathematical certainty was not possible. The trial judge nonetheless exhorted the jury to be as certain as humanly possible and instructed that the Commonwealth was required to prove each element beyond a reasonable doubt, if in a somewhat convoluted manner. Finally, the introductory comment that the layman's version is "pretty close" to the law's technical definition, even when considered along side the other disputed verbal formulations, does not prevent us from finding that the challenged aspects of the charge did not "so infect the entire charge and trial as to cause the jury to evaluate petitioner's guilt or innocence under a standard less than 'beyond a reasonable doubt'." *Lanigan v. Maloney,* 853 F.2d 40, 48 n. 7 (1st Cir.1988) (quoting *Bumpus,* 635 F.2d at 909, for standard required to reverse state conviction on reasonable doubt instruction). The trial court did not commit a constitutional error in its instructions on reasonable doubt. Thus, we do not find his arguments "so compelling" as to insure success and, consequently, there has been no "gross miscarriage of justice." *Hernandez–Hernandez,* 904 F.2d at 763.

■ Appellant also challenges the trial court's instruction on the definition of premeditated murder. During deliberations, the jury requested further instruction on premeditated murder. The trial judge answered their question by stating,

> [p]remeditated murder as distinguished from murder in the second degree is if [sic] it is planned beforehand, or to give you an alternative definition, if there is a definite decision to commit the act followed by the commission of the act, that would be premeditation.

None of the Massachusetts Supreme Judicial Court cases cited by appellant undermines this charge. The charge accords with *Commonwealth v. Ruci,* 409 Mass. 94, 96, 564 N.E.2d 1000, 1002 (1991), which requires that defendant reflect on a resolution to kill the victim, and with *Commonwealth v. Callahan,* 401 Mass. 627, 633, 519 N.E.2d 245, 249 (1988), which states that the act not be so spontaneous as to prevent reflection. Neither case mandates that specific words be used. Moreover, the court indicated in *Callahan* that the

judge's added statement that premeditation "excludes action which is taken so spontaneously that there is no time to think," was appropriate only because the judge earlier stated that premeditation "may occur within seconds." The trial judge in this case did not imply that premeditation could be formed in seconds. In this case, Watkins argued with the victim in the hallway outside the apartment, went to the kitchen to get a knife, and returned to the hallway where he fatally stabbed the victim. Watkins had time to reflect.

The jury focused on the critical distinction necessary to find guilt beyond a reasonable doubt of the crime of first degree murder. It chose to convict Watkins. Again, we do not find Watkins' arguments compelling and discern no "gross miscarriage of justice." *Hernandez–Hernandez*, 904 F.2d at 763. Thus, we are not required to considered the *McCleskey* exception. As a final matter, we note that Watkins has not made "a colorable showing of factual innocence," making the likelihood of success on the exception exceptionally slim.

Because the district court properly dismissed Watkins' new arguments as an abuse of the writ, we affirm.

*Affirmed.*