March 3, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1864

THEODIS WATKINS,

Petitioner, Appellant,

v.

JOSEPH PONTE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Joseph F. Shea, with whom Nutter, McClennen & Fish, was on

brief for appellant.
Robert N. Sikellis, Assistant Attorney General, Criminal

Bureau, with whom Scott Harshbarger, Attorney General, was on

brief for appellee.

March 3, 1993

TORRUELLA, Circuit Judge. Appellant, Theodis Watkins,

appeals from the district court's dismissal of his petition under

28 U.S.C. 2254. We affirm.

FACTS

Watkins was convicted of first degree murder on June

23, 1976 and sentenced to life in prison.1 In 1979, he filed a

pro se petition for a writ of habeas corpus ("1979 Petition").

The 1979 Petition was "mixed"; it presented both exhausted and

unexhausted claims for relief.2 The magistrate recommended

dismissal of the 1979 Petition and the district court affirmed

after appellant failed to challenge the magistrate's

recommendations within the prescribed ten day period. Watkins

sought a certificate of probable cause for appeal, Fed. R. App.

P. 22(b), on the two claims that had been exhausted. This court

denied the request and dismissed the appeal.

Watkins unsuccessfully pursued his unexhausted claims

in state court during the 1980s. In 1990, he filed the current

petition for writ of habeas corpus ("1990 Petition") alleging

three grounds that were not raised in the 1979 Petition.3

1 See Commonwealth v. Watkins, 373 Mass. 849, 370 N.E.2d 701

(1977), for the facts underlying Watkins' conviction.

2 The 1979 Petition asserted the following grounds for relief:
(1) failure to sequester witnesses; (2) inadequate instructions
on manslaughter; (3) inadequate instructions on malice; (4)
failure to direct a verdict for Watkins based on defective jury
charges that shifted the burden of proof to the petitioner; (5)
improper confinement to the dock during trial. At the time of
filing Watkins had only exhausted the first two grounds.

3 The amended 1990 Petition sought relief based on (1) the
inadequacy of the trial court's instruction on reasonable doubt;
(2) the inadequacy of the court's instruction on the distinction
between first and second degree murder; and (3) the inadequacy of

Relying on McCleskey v. Zant, 111 S. Ct. 1454 (1991), the

district court dismissed the first two grounds as an abuse of the

writ and ruled against Watkins on the third. Watkins now appeals

only the two arguments dismissed for abuse of the writ. As

appellant has failed to raise the third ground on appeal, we

treat it as waived. Brown v. Trustees of Boston Univ., 891 F.2d

337, 352 (1st Cir. 1989), cert. denied, 496 U.S. 937 (1990).

DISCUSSION

In McCleskey, the Supreme Court used the cause-and-

prejudice standard applicable to cases of procedural default,

see, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977), as part of

its analysis of the problems arising from successive petitions

for habeas corpus. The court stated,

[t]o excuse his failure to raise the
claim earlier, he must show cause for
failing to raise it and prejudice
therefrom as those concepts have been
defined in our procedural default
decisions. . . . If petitioner cannot
show cause, the failure to rise the claim
in an earlier petition may nonetheless be
excused if he or she can show that a
fundamental miscarriage of justice would
result from a failure to entertain the
claim.

111 S. Ct. at 1470. Earlier, in Rose v. Lundy, 455 U.S. 509, 510

(1982), the Supreme Court perceived that the multitude of

piecemeal habeas petitions unduly burdened the federal courts.

Rose sought to consolidate the issues for appeal in one

proceeding in each court system by establishing the "total

the trial court's instruction on malice.

-3-

exhaustion" rule. But it also preserved immediate access to the

federal courts on exhausted issues, provided the petitioner

consciously wished to risk losing an opportunity for federal

review of other claims. 455 U.S. at 510. Thus, Rose required

that district courts entertaining mixed habeas petitions offer

petitioners an explicit choice to proceed on exhausted claims or

delay federal review to bring all claims once exhausted. Id.

The Commonwealth contends that Watkins' 1990 Petition

falls squarely within McCleskey because back in 1979 Watkins

chose to appeal only the two exhausted claims presented in the

1979 Petition, and, therefore, bore the "risks [of] dismissal of

[his] subsequent federal petition[]" for abuse of the writ.

Rose, 455 U.S. at 510; McCleskey, 111 S. Ct. at 1467. The

Commonwealth argues further that Watkins abused the writ by

failing to assert the reasonable doubt and the second degree

murder claims in the original 1979 Petition since Watkins did not

allege, nor could he, that he lacked a substantial basis for

those claims in 1979. See McCleskey, 111 S. Ct. at 1468.

Watkins counters that the merits of the two exhausted

claims in the 1979 Petition were never properly before the court

of appeals because Watkins was never presented the choice between

dismissal and continuing only with exhausted claims as required

by Rose, 455 U.S. at 510. According to Watkins, the district

court effectively made the choice for him by dismissing the

petition as mixed. On appeal, this court refused to issue a

certificate of probable cause and dismissed the appeal. Thus,

-4-

argues Watkins, there can be no abuse because the 1990 Petition

is the first petition properly before the court.

We agree with the Commonwealth that we reviewed the

merits of two exhausted claims in the 1979 Petition. Watkins v.

Callahan, Misc. No. 80-8063 (1st Cir. Nov. 20, 1980). When we

decided that appeal, the Supreme Court's "total exhaustion" rule

of Rose had not yet been decided. This Circuit, and seven

others, did not condition district court review of mixed habeas

petitions on exhaustion of all state court claims. See Rose, 455

U.S. at 513 n.5 and cases cited therein; Miller v. Hall, 536 F.2d

967, 969 (1st Cir. 1976); Katz v. King, 627 F.2d 568, 574 (1st

Cir. 1980). In Niziolek v. Ashe, 694 F.2d 282, 287 (1st Cir.

1982), we held that individuals "who filed mixed petitions before

Rose issued should not be penalized for having followed the

procedure that prevailed at the time." That practice permitted

the court to rule on exhausted claims, while dismissing

unexhausted claims, because "it would be indefensible to refuse

to consider a meritorious claim merely on the grounds that it

might eventually be mooted by a favorable state court ruling on

his appeal of unrelated issues." Miller, 536 F.2d at 969.

Providing prompt relief to individuals who filed mixed petitions

obviously did not contemplate summarily rejecting subsequent

petitions.

We followed the pre-Rose procedure with respect to the

1979 Petition. We dismissed the merits of the exhausted claims

and reserved consideration of the unexhausted claims. Thus,

-5-

Watkins reasonably assumed that we would consider his unexhausted

claims in a subsequent petition once he had exhausted them.

Because we considered the 1979 Petition on the merits, however,

we must use it as the bench mark for the abuse-of-the-writ

analysis.

In this context, McCleskey's cause-and-prejudice

standard plainly requires the dismissal of claims raised in the

1990 Petition that Watkins failed to raise in the 1979

Petition.4 To justify the failure to raise a claim, appellant

must demonstrate that some "external impediment, whether it be

government interference or the reasonable unavailability of the

factual basis for the claim, must have prevented [him] from

raising the claim." McCleskey, 111 S. Ct. at 1472. Watkins also

failed to demonstrate that he made a "reasonable and diligent

investigation aimed at including all relevant claims and grounds

for relief in the first federal habeas petition." Id. at 1472.

This test forms the cause prong of the McCleskey test and Watkins

failed to meet it. Although Watkins' counsel asserted that

Watkins could meet both prongs at the hearing before the district

court on the 1990 Petition, he never explained how. On appeal,

Watkins did not raise the argument. We conclude that the

reasonable doubt and second-degree murder challenges to his

conviction were available to Watkins at the time of the 1979

Petition and that he has shown no cause for failing to raise

4 Despite the age of this case there is no problem as McCleskey

applies retroactively. Andiarena v. United States, 967 F.2d 715,

717-18 (1st Cir. 1992).

-6-

them.

Finally, Watkins' argues that even if the 1990 Petition

is an abuse, a "fundamental miscarriage of justice would result"

from refusing to consider his new claims. This exception to

McCleskey is narrow, as it is contemplated only for

"extraordinary instances when a constitutional violation probably

has caused the conviction of one innocent of the crime." Id. at

1470. In describing this exception, the McCleskey court

suggested that the petitioner must supplement the constitutional

violation with a "colorable showing of factual innocence." Id.

at 1471 (quoting Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986));

see also Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992).

Watkins' case falls outside this narrow exception

because he did not squarely raise the "fundamental miscarriage of

justice" issue before the district court. While he claims that

the argument was implicit in his Memorandum in Support of

Petition for Writ of Habeas Corpus, we find this insufficient in

light of the fact that Watkins did not argue the exception at the

hearing before the district court when it ruled against him on

the basis of McCleskey.5

"This circuit religiously follows the rule that issues

not presented to the district court cannot be raised on appeal."

Ouimette v. Moran, 942 F.2d 1, 12 (1st Cir. 1991) (rule applied

5 We note that Watkins also failed to object to the allegedly
infirm instruction at the original trial. Commonwealth v.

Watkins, Crim. Action No. 95-794, slip op. at 3-4 (Superior Ct.

July 7, 1989).

-7-

in habeas context); Knight v. United States, 611 F.2d 918, 920

n.2 (1st Cir. 1979) (rule applied in habeas context). Only in

cases in which "a gross miscarriage of justice" would occur and

in which "the new ground [is] so compelling as to virtually

insure appellant's success" can we consider arguments that were

not raised below. Hern ndez-Hern ndez v. United States, 904 F.2d

758, 763 (1st Cir. 1990) (quoting Johnston v. Holiday Inns, 595

F.2d 890, 894 (1st Cir. 1979)). To determine whether a gross

miscarriage of justice would occur if we do not consider the

McCleskey exception, we must look at appellant's claims.

Watkins first challenges the trial court's jury

instructions on reasonable doubt. He claims that four aspects of

the instructions, when taken together, derogate the

Commonwealth's burden of proof. First, the trial court stated

that reasonable doubt was not "foolish" or "fanciful" doubt.

Second, it suggested that reasonable doubt was something less

than a "mathematical or an artificial certainty." Third, it

presented its instruction on essential elements of a crime, as

opposed to collateral issues, in a confusing manner. Finally,

the trial court stated that "the average layman's version of

'reasonable doubt' would come pretty close to what the law in

much more technical language says."

While criminal defendants often challenge instructions

on reasonable doubt, "our experience has been that even imperfect

formulations usually meet constitutional requirements when viewed

in the context of the entire charge." Lanigan v. Maloney, 853

-8-

F.2d 40, 45 (1st Cir. 1988), cert. denied, 488 U.S. 1007 (1989).

We must "tolerate a reasonable range of expression, some or even

much of which may not suit our fancy," unless we impose pattern

jury instructions. Bumpus v. Gunter, 635 F.2d 907, 910 (1st Cir.

1980), cert. denied, 450 U.S. 1003 (1981). In this case, the

trial judge's instruction on reasonable doubt were less than

perfect. They were confusing in parts, but do not rise to the

level of constitutional infirmity.

The trial court's statement with respect to "foolish"

or "fanciful" doubt came close to the instruction we censured in

Dunn v. Perrin, 570 F.2d 21, 24 (1st Cir.), cert. denied, 437

U.S. 910 (1978). In Dunn, the trial court erred by shifting the

burden to the defendant. It stated that reasonable doubt was

doubt that could not "readily or easily [be] explained away, but

rather such a strong and abiding conviction as still remains

after careful consideration of all the facts and arguments . . .

." Id. In this case, the trial court did not shift the burden

to defendant. It stated that reasonable doubt was "a doubt that

resides in the mind of a reasonable man who is earnestly seeking

the truth. It is not a foolish doubt. It is not a fanciful

doubt. It is not a doubt in the mind of a juror who is simply

seeking an excuse to acquit a defendant." While a poor

formulation, this instruction essentially asked the jurors to

seriously pursue the truth. Appellant's reliance on Dunn is

misplaced.

With respect to the other errors alleged, it is true

-9-

that the trial judge indicated that a mathematical certainty was

not possible. The trial judge nonetheless exhorted the jury to

be as certain as humanly possible and instructed that the

Commonwealth was required to prove each element beyond a

reasonable doubt, if in a somewhat convoluted manner. Finally,

the introductory comment that the layman's version is "pretty

close" to the law's technical definition, even when considered

along side the other disputed verbal formulations, does not

prevent us from finding that the challenged aspects of the charge

did not "so infect the entire charge and trial as to cause the

jury to evaluate petitioner's guilt or innocence under a standard

less than 'beyond a reasonable doubt'." Lanigan v. Maloney, 853

F.2d 40, 48 n.7 (1st Cir. 1988) (quoting Bumpus, 635 F.2d at 909,

for standard required to reverse state conviction on reasonable

doubt instruction). The trial court did not commit a

constitutional error in its instructions on reasonable doubt.

Thus, we do not find his arguments "so compelling" as to insure

success and, consequently, there has been no "gross miscarriage

of justice." Hern ndez-Hern ndez, 904 F.2d at 763.

Appellant also challenges the trial court's instruction

on the definition of premeditated murder. During deliberations,

the jury requested further instruction on premeditated murder.

The trial judge answered their question by stating,

[p]remeditated murder as distinguished
from murder in the second degree is if
[sic] it is planned beforehand, or to
give you an alternative definition, if
there is a definite decision to commit
the act followed by the commission of the

-10-

act, that would be premeditation.

None of the Massachusetts Supreme Judicial Court cases cited by

appellant undermines this charge. The charge accords with

Commonwealth v. Ruci, 409 Mass. 94, 96, 564 N.E.2d 1000, 1002

(1991), which requires that defendant reflect on a resolution to

kill the victim, and with Commonwealth v. Callahan, 401 Mass.

627, 633, 519 N.E.2d 245, 249 (1988), which states that the act

not be so spontaneous as to prevent reflection. Neither case

mandates that specific words be used. Moreover, the court

indicated in Callahan that the judge's added statement that

premeditation "excludes action which is taken so spontaneously

that there is no time to think," was appropriate only because the

judge earlier stated that premeditation "may occur within

seconds." The trial judge in this case did not imply that

premeditation could be formed in seconds. In this case, Watkins

argued with the victim in the hallway outside the apartment, went

to the kitchen to get a knife, and returned to the hallway where

he fatally stabbed the victim. Watkins had time to reflect.

The jury focused on the critical distinction necessary

to find guilt beyond a reasonable doubt of the crime of first

degree murder. It chose to convict Watkins. Again, we do not

find Watkins' arguments compelling and discern no "gross

miscarriage of justice." Hern ndez-Hern ndez, 904 F.2d at 763.

Thus, we are not required to considered the McCleskey exception.

As a final matter, we note that Watkins has not made "a colorable

showing of factual innocence," making the likelihood of success

-11-

on the exception exceptionally slim.

Because the district court properly dismissed Watkins'

new arguments as an abuse of the writ, we affirm.

Affirmed.

-12-