53 F.3d 327
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Ralph C. HAMM, III, Petitioner, Appellant,
v.
Paul MURPHY, Superintendent, Respondent, Appellee.
 No. 94-2175.
 United States Court of Appeals,
First Circuit.
 April 10, 1995.
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Douglas P. Woodlock, U.S. District Judge]
 Ralph C. Hamm, III on brief pro se.
 Scott Harshbarger, Attorney General, and William J. Meade, Assistant Attorney General, on brief for appellee.
 Before CYR, BOUDIN and STAHL, Circuit Judges.
 D.Mass.
 AFFIRMED.
 PER CURIAM.
 
 
 1
 Petitioner Ralph Hamm appeals from a district court judgment dismissing his third petition for a writ of habeas corpus on the ground of abuse of the writ. For the reasons that follow, we affirm.
 
 
 2
 In 1969, as a result of his involvement in a particularly vicious attack on a young couple parked in a wooded area in Lawrence, Massachusetts, petitioner was convicted in state court of the following offenses: two counts of armed robbery; two counts of mayhem; assault with intent to murder; assault with intent to rape; and malicious destruction of property.[1] A lengthy term of imprisonment was imposed,[2] and his convictions were subsequently affirmed. Commonwealth v. Hamm, 357 Mass. 354, cert. denied, 400 U.S. 908 (1970). Following a ten-year interlude, petitioner then pursued, between 1980 and 1994, four separate requests for post-conviction relief in the state courts, advancing various unsuccessful challenges to his convictions and sentences.
 
 
 3
 Petitioner turned to federal court in 1989, filing a habeas petition in which he questioned the constitutionality of his sentencing structure. That petition was dismissed for failure to exhaust state remedies. In December 1991, with the assistance of counsel, he filed a second petition raising the same sentencing issues.[3] The district court addressed this second petition on the merits on May 18, 1994, granting partial relief. Cross-appeals from such ruling are now pending before this court.
 
 
 4
 Six days prior to that ruling, petitioner filed the instant pro se petition (his third), advancing various challenges to his underlying convictions.[4] Respondent raised the affirmative defense of abuse of the writ in its answer, submitted a supplemental answer reciting the history of petitioner's prior writs, and moved to dismiss on this basis. Petitioner filed a lengthy memorandum in opposition. In a cogent decision, the district court dismissed the petition as an abuse of the writ pursuant to McCleskey v. Zant, 499 U.S. 467 (1991). This appeal ensued.
 
 
 5
 Under the now-familiar McCleskey standards, "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." Id. at 489. Once adequately pleaded by the government, the burden to disprove abuse of the writ falls upon the petitioner. Id. at 494. To sustain this burden, he must show "cause" for his failure to raise the claim earlier and "prejudice" resulting therefrom. Id. The former requires a showing that some external impediment-e.g., governmental interference; the reasonable unavailability of the factual or legal basis for the claim; ineffective assistance of counsel-prevented it from being earlier asserted. Id. at 493-94. The latter requires a showing of actual prejudice stemming from the errors complained of. Id. at 494. If cause and prejudice are not shown, the failure to raise the claim in an earlier petition may nonetheless be excused if petitioner can demonstrate "that a fundamental miscarriage of justice would result from a failure to entertain the claim." Id. at 494-95. Accord, e.g., Watkins v. Ponte, 987 F.2d 27, 29-30 (1st Cir. 1993); Whittemore v. United States, 986 F.2d 575, 578 (1st Cir. 1993); Andiarena v. United States, 967 F.2d 715, 716 (1st Cir. 1992) (per curiam).
 
 
 6
 Petitioner has not shown cause for his failure to include in his second petition the claims he now advances in his third.[5] His principal argument in this regard is that such omission was justified because the two petitions alleged unrelated constitutional violations (occurring at separate times) and sought different forms of relief. In the instant petition, petitioner seeks to be released from custody and afforded a new trial because of alleged errors tainting his 1969 trial. In his earlier petition, by contrast, he challenged a 1977 change in the state's policy for calculating parole eligibility; the relief there requested was that he be paroled (or at least be considered for parole) on his life sentences.[6] For this reason, he says, consolidating all such claims in a single petition was unnecessary.
 
 
 7
 This argument is misplaced. Petitioner concedes that both sets of challenges-to his convictions and to his sentences-are proper subjects of habeas proceedings. See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 490 (1973). He also concedes that the basis for his instant claims was known to him at the time he filed his second petition. As such, the fact that the respective series of claims involved disparate topics provided no justification for advancing them in piecemeal fashion.[7] See, e.g., McGary v. Scott, 27 F.3d 181, 183-84 (5th Cir. 1994) (challenge to denial of "good time credit" should have been brought as part of earlier Sec. 2254 petition challenging conviction on double jeopardy grounds); Whittemore, 986 F.2d at 577 (various challenges to conviction and sentence should have been brought as part of earlier Sec. 2255 petition alleging unlawful denial of parole).
 
 
 8
 Nor does it avail him that his trial challenges were not yet exhausted at the time he filed his second petition. "Failure to exhaust does not constitute cause if the petitioner [was] aware of his new claims at the time he assert[ed] his previous petition." Herbst v. Scott, 42 F.3d 902, 906 (5th Cir. 1995). By choosing to proceed with his second petition containing his exhausted claims, petitioner "risk[ed] losing an opportunity for federal review of [his] other [unexhausted] claims." Watkins, 987 F.2d at 30 (citing Rose v. Lundy, 455 U.S. 509 (1982)).[8]
 
 
 9
 Finally, petitioner's claimed ignorance of the McCleskey requirements is without significance. That decision had been in effect for some eight months by the time petitioner elected to proceed with his second petition.[9] The form on which that petition was submitted contained the customary printed warning, to the effect that failure to present all available grounds may bar petitioner "from presenting additional grounds at a later date." See, e.g., Whittemore, 986 F.2d at 578. And as mentioned, the second petition was prepared with the assistance of counsel.
 
 
 10
 In turn, petitioner has provided no basis for invoking the "miscarriage of justice" provision. That narrow exception requires a showing, not just that a constitutional violation occurred, but that "the alleged ... violation caused the conviction of an innocent person." McCleskey, 499 U.S. at 502.[10] Petitioner has provided no new evidence to support a finding of innocence, apart from a few insignificant offerings.[11] Indeed, he has not specifically alleged that he is innocent of his various crimes, apart from a few oblique or otherwise misplaced suggestions to that effect.[12] Instead, he concentrates his efforts on criticizing the assistance provided to him by trial and appellate counsel-a matter entirely collateral to the actual innocence exception. See, e.g., Schlup v. Delo, 115 S. Ct. 851, 861 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). Having fully reviewed petitioner's voluminous submissions, we find overwhelming evidence to support his guilt on all charges.
 
 
 11
 Affirmed.
 
 
 
 [1]
 The details of the attack, perpetrated by petitioner and two codefendants, are recounted in Commonwealth v. Hamm, 19 Mass. App. Ct. 72, 73-74 (1984)
 
 
 [2]
 As later reduced by the Appellate Division of the Superior Court, his sentence consisted of two concurrent life terms, to be followed by four "from and after" terms totalling 26 to 40 years. (His conviction for malicious destruction of property was placed on file.)
 
 
 [3]
 An earlier version of that petition had likewise been dismissed on non-exhaustion grounds, but petitioner submitted an amended petition deleting the unexhausted claim
 
 
 [4]
 Three grounds for relief were asserted: (1) ineffective assistance of trial and appellate counsel; (2) involuntary waiver of the right to jury trial, improperly induced, in part, by fear that the cross-racial character of the crimes might prejudice potential jurors; and (3) fundamental unfairness of the trial and post-conviction proceedings
 
 
 [5]
 Petitioner's first petition did not trigger the abuse of the writ doctrine, inasmuch as it was dismissed without prejudice on non-exhaustion grounds. See, e.g., Woods v. Whitley, 933 F.2d 321, 322 n.1 (5th Cir. 1991)
 
 
 [6]
 The 1977 policy reinterpreted the state's parole statutes and case law concerning the aggregation of life sentences and "from and after" sentences. Under the former policy, petitioner would have been eligible for parole on his life sentences in November 1983. (If successful, he would have been paroled at that time to his "from and after" sentences.) Under the new policy, he does not become eligible for parole on his aggregated sentences until November 2001
 In the second petition, the district court found no ex post facto violation, but ruled that petitioner had had a justifiable expectation in being considered for parole in 1983 and thus had been deprived of a liberty interest without due process. Respondent was ordered to conduct a parole hearing on petitioner's life sentences, with any grant of parole to take effect on a nunc pro tunc basis. As mentioned, this ruling is the subject of pending cross-appeals.
 
 
 [7]
 A different conclusion would result, of course, had petitioner filed a federal habeas petition challenging his convictions prior to the 1977 change in parole eligibility policy, and then a subsequent petition challenging that new policy
 
 
 [8]
 We recognize (although petitioner has not mentioned the point) that the decision he faced in 1991-whether to proceed with his challenges to his parole eligibility or to await exhaustion of his challenges to his convictions-might have placed him in something of a quandary. The district judge who addressed his second petition observed that, under the best- case scenario, petitioner could have been released on parole as early as 1989. An obvious impetus thus existed to have his parole claims adjudicated promptly in federal court. Yet his trial claims were not exhausted until January 1994
 Whether the district court here, for this reason, would have been justified in declining to dismiss on abuse of the writ grounds is a matter we need not decide. The district court did not so rule. And that result can hardly be called into question-especially since petitioner, having pursued his state court remedies in tardy, piecemeal fashion, was largely responsible for such predicament.
 
 
 [9]
 McCleskey, in any event, applies retroactively. See, e.g., Andiarena, 967 F.2d at 717-18
 
 
 [10]
 In discussing the "actual innocence" exception in the context of eligibility for the death penalty, the Court in Sawyer v. Whitley, 112 S. Ct. 2514 (1992), held that a petitioner must make such a showing by "clear and convincing evidence." Id. at 2517. Thereafter, in Schlup v. Delo, 115 S. Ct. 851 (1995), the Court held that a claim of innocence as to the underlying crime was to be tested by a probability standard: "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 867 (adopting test set forth in Murray v. Carrier, 477 U.S. 478, 496 (1986))
 Relying on Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994), cert. denied, 115 S. Ct. 739 (1995), a pre-Schlup procedural default case in which we quoted both the Murray and Sawyer standards, respondent suggests that Schlup should be confined to death penalty cases and that the more stringent Sawyer standard should govern here. As petitioner has not satisfied either standard, we need not address this issue-other than to note that other courts have applied Schlup outside the death penalty context. See, e.g., Barrington v. Norris, ___ F.3d ___, 1995 WL 90489 (8th Cir. 1995) (per curiam); see also Whitmore v. Avery, 115 S. Ct. 1086 (1995) (mem.) (vacating judgment in a non-death penalty case in which "clear and convincing" standard had been applied, and remanding for further consideration in light of Schlup ).
 For the same reason, we likewise need not decide the appropriate standard under which to review abuse of the writ decisions in the wake of McCleskey-whether to continue applying an abuse of discretion standard, see, e.g., Nachtigall v. Class, ___ F.3d ___, 1995 WL 82882, at * 2 (8th Cir. 1995); Campbell v. Blodgett, 997 F.2d 512, 516 (9th Cir. 1992), cert. denied, 114 S. Ct. 1337 (1994), or to adopt a de novo standard of review, see Macklin v. Singletary, 24 F.3d 1307, 1311-13 (11th Cir. 1994), cert. denied, 115 S. Ct. 1122 (1995). See also Schlup, 115 S. Ct. at 870 (O'Connor, J., concurring) (leaving unresolved whether miscarriage of justice exception is to be reviewed under abuse of discretion standard).
 
 
 [11]
 His principal submission is an affidavit describing the dimensions of the back seat area of the automobile in which part of the attack occurred. He deduces therefrom that a man of his size could not easily have occupied that space along with the female victim
 
 
 [12]
 For example, his assertion that he could not have been guilty of armed robbery because only his two codefendants had carried knives is legally frivolous. See, e.g., Commonwealth v. Harris, 9 Mass. App. Ct. 708, 709 (1980)