COMMONWEALTH *vs.* THEODIS WATKINS.

Suffolk.    November 7, 1977. — December 9, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide.    Practice, Criminal,* Sequestration of witnesses, Capital case.

At a murder trial, the judge's refusal of the defendant's motion to sequester witnesses did not prejudice the defendant. [850-851]
At a murder trial, evidence that the defendant, after a quarrel with the victim in a hallway outside an apartment, went to the kitchen of the apartment, picked up a knife, and returned to the hallway to stab the victim warranted a finding of deliberate premeditation. [851-852]

Where there was no evidence at a murder trial from which the jury could reasonably have found that the victim was killed upon sudden combat or reasonable provocation, there was no error in the judge's refusal to charge the jury on manslaughter. [852]

Where there was evidence from which a jury could find that a defendant acted with deliberate premeditation in killing the victim, this court declined to exercise its powers under G. L. c. 278, § 33E. [852-853]

INDICTMENT found and returned in the Superior Court on November 17, 1975.

The case was tried before Ford, J.

Richard J. Vita (Scott E. Shteir with him) for the defendant.

Daniel C. Mullane, Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.   The defendant appeals from a conviction of murder in the first degree. We hold that any error in the trial judge's refusal to sequester witnesses was harmless beyond a reasonable doubt, that there was no error in the denial of a directed verdict as to murder in the first degree, and that the judge was not required to charge the jury with respect to manslaughter. We also decline to disturb the result under G. L. c. 278, § 33E, and affirm the conviction.

The Commonwealth produced evidence of the following facts. Emma Sherrod lived in a first floor apartment in Boston, and had been "going with" the victim, a man who lived on the third floor. They "broke up," and she started seeing the defendant. On August 3, 1974, the victim had been drinking; he came to her apartment and "started hassling" her. Later he and the defendant had an argument outside the apartment or in the living room. The defendant ran into the kitchen, picked up a knife from the sink, and ran back into the hallway. The victim said, "Man, leave me alone." The defendant stabbed him, and he died. The defendant offered no evidence.

1. Sequestration of witnesses.   Before the prosecutor's opening statement, the defendant moved to sequester the witnesses because the incident "happened nearly two years ago," and the witnesses were "known to each other, and

friendly with each other." The Commonwealth did not oppose the motion. The judge said he would adhere to his "usual practice" and deny the motion. "At least twice during the trial the question usually comes up," he said, "did they talk to someone outside, or did they sneak in the courtroom."

The three principal witnesses were Emma Sherrod and Cynthia Hart, who shared the first floor apartment, and the victim's male cousin. Sherrod testified to the events leading up to the argument and to seeing the victim lying in the hallway. The victim's cousin testified that he saw the stabbing and subsequent events from across the street. Hart testified that she was in the kitchen, heard the argument, saw the defendant run in and out of the kitchen, and heard the victim's statement before he was stabbed. Sherrod and Hart knew the defendant beforehand; only the victim's cousin gave a detailed description of the defendant.

The sequestration of witnesses lies within the sound discretion of a trial judge, but the better practice in "capital cases" is to allow such a procedure. *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 748-749 (1975), and cases cited. The defendant points out that in some jurisdictions the procedure is mandatory if requested by a party. See, e.g., Fed. R. Evid. 615; 6 J. Wigmore, Evidence § 1839 (Chadbourn rev. 1976). The advantages, he argues, outweigh the possibility of troublesome sequelae. See *State* v. *Williams,* 29 N.J. 27, 47 (1959). Adherence to a "usual practice" of denying such motions, he says, is not a proper exercise of discretion.

There is force in these contentions. But, assuming without deciding that an abuse of discretion was shown, we think it clear beyond a reasonable doubt that there was no resulting prejudice to the defendant. The three witnesses testified to different events, from different vantage points, and their accounts were not entirely consistent with each other. Two of them were identifying the defendant as a person they knew. We find no possibility that the testimony of one influenced the testimony of another.

2. *Murder in the first degree.* The defendant argues

that the evidence did not warrant a finding of deliberate premeditation, citing *Commonwealth* v. *McInerney, ante,* 136, 153-154 (1977). We think, however, that the evidence that the defendant, after a quarrel, went to the kitchen, picked up a knife and returned to stab the victim is sufficient. In addition there was testimony that the victim "kept telling him, 'Man, leave me alone,'" and that after the stabbing the defendant said, "Come back, and get some more." Hart testified that the defendant then went into the living room, said he would kill anyone who came in, called someone on the telephone and said he had stabbed somebody and had to get out of there. He was located in Florida fifteen months later.

3. *Manslaughter.* The judge denied the defendant's request to charge the jury with respect to manslaughter. It is well established that it is reversible error to refuse to give such an instruction if on any view of the evidence the issue of manslaughter is open. But the judge is not required to charge on a hypothesis not supported by evidence. There was no evidence in this case from which the jury could have found sudden combat or reasonable provocation, especially in light of the evidence introduced tending to show malice and premeditation. *Commonwealth* v. *Caine,* 366 Mass. 366, 374-375 (1974), and cases cited. Quarreling alone cannot provide a reasonable provocation. *Commonwealth* v. *Zukoski,* 370 Mass. 23, 28 (1976).

4. *Section 33E.* After reviewing the law and the evidence, we have concluded that the defendant is not entitled to relief under G. L. c. 278, § 33E. This case, like *Commonwealth* v. *Stillwell,* 366 Mass. 1, 4-6 (1974), cert. denied sub nom. *McAlister* v. *Massachusetts,* 419 U.S. 1115 (1975), falls within the group of cases where "the defendants first had difficulties with their ultimate victims, ... they left the scene for a period of time to obtain weapons, then returned to the scene and committed the homicides. In each case there appears to have been a period of reflection and premeditation after the original difficulties between the parties and before the ultimate homicide." In the present case the defendant did not leave for very long

and did not go very far, but we think the question whether there was deliberate premeditation was fairly presented to the jury. We do not sit as a second jury to pass anew on the question of the defendant's guilt. See *Commonwealth v. Reddick,* 372 Mass. 460, 464 (1977).

*Judgment affirmed.*