COMMONWEALTH *vs.* DIANE E. FARLEY.

Norfolk. June 28, 2000. - July 25, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Cross-examination by prosecutor. *Evidence,* Cross-examination. *Homicide.*

At the trial of a murder case, the defendant was denied the effective assistance of counsel where her counsel was not prepared, and failed to investigate and develop evidence which could have supported the defendant's defense and which could have raised a reasonable doubt in the minds of the jurors: a new trial was required. [156-157]

In a murder case, the Commonwealth introduced evidence sufficient to establish the defendant's premeditation. [157-158]

At the trial of an indictment for murder in the first degree, the prosecutor improperly cross-examined the defendant about her postarrest, post-Miranda silence. [158-159]

INDICTMENT found and returned in the Superior Court Department on May 19, 1993.

The case was tried before *Sandra L. Hamlin,* J., and a motion for a new trial was heard by her.

*Greg T. Schubert* for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Diane E. Farley, appeals from her conviction of murder in the first degree, and from the denial of her motion for a new trial. On appeal, she claims, inter alia, that she is entitled to a new trial because her trial counsel[1] was ineffective. We agree and therefore reverse the conviction of murder in the first degree and remand the case for a new trial.

1. *Facts.* A jury could have found the following. The defendant went to the victim's home in Dedham on the evening of April 23, 1993. After having a few drinks, they went out to a

---

[1]The case was reargued after a petition for rehearing was filed by the Commonwealth. The defendant is represented by new counsel on appeal.

bar. They both returned to the victim's house in the early morning hours of April 24. Then, the victim left the house in her automobile. The defendant became concerned about the victim's departure because the victim had consumed alcoholic beverages earlier. The defendant knocked on neighbors' doors in an unsuccessful effort to secure help in locating the victim. At approximately 3 A.M., the victim returned home.

While the victim was out, the defendant telephoned her own home. She requested that David Blatz, a friend who had been staying at her home for several weeks, give her a ride from the victim's home to her own home. She stated that she and the victim had been arguing. Blatz refused to give her a ride at that time, but indicated that he would give her a ride later in the morning if she wanted one then.

At approximately 3:15 A.M., Saleem Ghazali, a friend of the victim, arrived at the victim's home.[2] Ghazali observed that the victim "seemed uncomfortable," but the defendant assured him that the victim would be fine. Ghazali then left.

The victim called William Armour at approximately 5:45 A.M. and they spoke for about fifteen minutes. She called two additional times. The last call ended at approximately 6:10 A.M.

One of the victim's neighbors, Amy Cosgrove, called the victim's home at approximately 8:30 A.M. The defendant answered the phone and informed Cosgrove that the victim was sleeping.

Sometime between 8 A.M. and 8:30 A.M., the defendant called Blatz at her home and asked him to pick her up. Blatz agreed to do so and arrived at the victim's house at approximately 9:30 A.M. He did not enter the house. The defendant went to Blatz's car, placed something on the floor of the back seat, returned to the house, got something else, and then they drove away. Blatz (and one of the victim's neighbors) noticed that the defendant had a stain on her pants. When Blatz asked the defendant about the stain, she offered three different explanations on three occasions. On the ride home, the defendant informed Blatz that she and the victim had been up all night fighting.

---

[2]Earlier in the evening, when the victim and Saleem Ghazali were at a bar together, the victim had given money to Ghazali to buy cigarettes for her. Ghazali failed to give the cigarettes to her before he left the bar. When he arrived home at approximately 2 A.M., there were several messages on his answering machine from the victim asking where her cigarettes were. He then purchased some at a convenience store and drove to the victim's house to give them to her.

That afternoon, at approximately 2 P.M., the victim's brother discovered the victim lying dead in her bedroom. She had been stabbed eleven times. She had defensive wounds on her hands and arms, as well as marks on her breast that allegedly were caused after her death by the tip of a knife. Blood consistent with the defendant's blood was found on the victim's body, under her fingernails, and on her bedspread. Blood also was found on several items in the bathroom, including the sink and the tub area. Both the defendant's blood and the victim's blood were found on a bathrobe that was balled up in the living room. In addition, semen and sperm cell heads were found in the crotch of the victim's pantyhose and on a hairbrush in the victim's bedroom.

The defendant was questioned by police at her home on April 24. At that time, she stated that a drug dealer named "Rafael" had arrived at the victim's house sometime between 5:30 and 6 A.M. She said that the victim and Rafael had argued. She further stated that when she left with Blatz, Rafael was still in the house with the victim. She described Rafael as a light-skinned Hispanic male with a distinctive haircut. Subsequently, the defendant gave additional statements to the police and to the grand jury regarding the events leading up to and immediately after the victim's death. These statements varied significantly.

The defendant repeatedly told her trial counsel that Rafael had killed the victim. Consequently, trial counsel hired an investigator to search for Rafael. Trial counsel learned of Rafael's location several weeks before trial, and disclosed this information to the Commonwealth. Trial counsel failed to interview Rafael at any point before trial. At trial, the prosecutor called "Rafael" (Roland Jones) to testify as a witness for the Commonwealth. Rafael testified that he did not know the victim, had never been inside a home in Dedham, and was not involved in the victim's murder.

The defendant took the stand on her own behalf and told a version of the events that differed from her prior statements. She testified that, after Rafael arrived, she fell asleep on the victim's bed. She explained that she awakened to find Rafael next to her, with his penis exposed. She said that the victim then entered the room and began scuffling with Rafael. The defendant testified that she attempted to intervene in the fight and was stabbed in the hand. She said that she ran to the basement and waited until the house was quiet. She testified that she

then went to the victim's bedroom, touched her, called for a ride home, and left.

The defendant was convicted of murder in the first degree on a theory of deliberate premeditation. She timely filed a notice of appeal. While her direct appeal was pending, she filed in this court a motion for a new trial. A single justice of this court remanded that motion to the trial judge, who denied it. The defendant now appeals from her conviction and the denial of her motion for a new trial.

2. *Ineffective assistance of counsel.*[3] The defendant argues that she was denied effective assistance of counsel at trial. We agree. Trial counsel put forth a defense and then failed to develop this defense through evidence, cross-examination, or in summation. He thereby effectively left the defendant "denuded of a defense." *Commonwealth* v. *Street*, 388 Mass. 281, 287 (1983). See *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 274 (1983); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Here, "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

The defense theory was that Rafael, not the defendant, had killed the victim. There was evidence which, if developed, might have raised a reasonable doubt about whether the defendant or someone else had killed the victim. Semen and sperm cells were found at the scene of the crime. The record before us does not indicate that this evidence was investigated by defense counsel or his investigator. The Commonwealth's chemist testified that blood found at the scene could support an inference that a third person was present at the scene of the crime. The defendant had defensive hand wounds. Defense counsel did not develop *any* of this evidence either through testing or cross-examination.[4] Additionally, defense counsel did not interview Rafael before or after Rafael became a witness for the Commonwealth. His cross-examination of Rafael, which

---

[3]We agree with the Commonwealth that issues as to defense counsel's professional and ethical obligations that do not affect the trial of the defendant are not germane to this appeal. This appeal concerns the conviction of the defendant. Therefore, we only discuss defense counsel's conduct insofar as it affected his representation of the defendant.

[4]We do not suggest that defense counsel had to investigate and develop *all* of this evidence. Here, however, defense counsel simply claimed someone else committed the crime and then did absolutely nothing to develop that defense before the jury.

devoted significant time to extraneous issues such as Rafael's involvement with dealing drugs, was pointless and rambling.

In his summation, defense counsel simply recited the evidence.[5] He did not marshal the evidence favorable to the defendant's defense in an effort to create a reasonable doubt. See *Commonwealth* v. *Triplett,* 398 Mass. 561, 568-569 (1986), quoting *Herring* v. *New York,* 422 U.S. 853, 862 (1975) ("[N]o aspect of [our adversary system] could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment"); *Commonwealth* v. *Westmoreland, supra* at 274 (in summation, counsel failed to discuss evidence in support of possibly viable defense theory).

In short, the defendant was denied a fair trial due to trial counsel's lack of preparation[6] and his failure to investigate and develop the evidence which could have supported the defendant's defense and which could have raised a reasonable doubt in the minds of the jurors. See *Commonwealth* v. *Haggerty,* 400 Mass. 437, 441 (1987), citing *Commonwealth* v. *Rondeau,* 378 Mass. 408, 413 (1979) ("This is not a case where 'arguably reasoned tactical or strategic judgments . . . are called into question . . .' "). See *Commonwealth* v. *Street, supra* at 287; *Commonwealth* v. *Westmoreland, supra* at 274; *Commonwealth* v. *Saferian, supra* at 96. Trial counsel failed to advance the defendant's case effectively through the use of evidence, testimony, and argument at trial. Accordingly, we reverse the judgment of the Superior Court and remand the case for a new trial.

3. *Issues likely to arise during retrial.* Given our disposition of the issue above, we need not resolve all of the defendant's other claims. However, we do consider issues raised by the defendant that may recur during the new trial.

a. *Deliberate premeditation.* The defendant argues that the Commonwealth failed to prove deliberate premeditation. We disagree. To establish deliberate premeditation, the Commonwealth relied on the fact that the victim had been stabbed multiple times; the location of the wounds; the duration of the

---

[5]Defense counsel also committed error in his closing argument by telling the jury that he believed the defendant was telling the truth in her testimony. See Mass. R. Prof. C. 3.4 (e), 426 Mass. 1389 (1998).

[6]At several points during the trial, the prosecutor questioned the purpose of trial counsel's examination of witnesses. On several occasions, the judge also stated that she did not understand the thrust of the questioning.

attack; and the inference that the defendant carried a knife from the kitchen to the victim's upstairs bedroom. This evidence is sufficient to establish deliberate premeditation. See *Commonwealth* v. *Watkins*, 373 Mass. 849, 851-852 (1977) ("The defendant argues that the evidence did not warrant a finding of deliberate premeditation . . . . We think, however, that the evidence that the defendant, after a quarrel, went to the kitchen, picked up a knife, and returned to stab the victim is sufficient" [citation omitted]). See also *Commonwealth* v. *Ruci*, 409 Mass. 94, 96-97 (1991) ("We have stated that, where a defendant brings a gun to the scene of the crime, there is sufficient evidence to support an inference of premeditation"); *Commonwealth* v. *Parker*, 389 Mass. 27, 30 n.2 (1983) (evidence that the defendant left the scene, returned with a gun and then shot the unarmed victim was sufficient evidence of deliberate premeditation).

b. *The defendant's postarrest silence.* During the trial, the prosecutor cross-examined the defendant as to why she failed to provide some information to the police after having been advised of her Miranda warnings. The defendant responded that she was under arrest and wanted a lawyer. On appeal, the defendant argues that this questioning constitutes prosecutorial error. See *Doyle* v. *Ohio*, 426 U.S. 610 (1976); *Commonwealth* v. *Peixoto*, 430 Mass. 654, 658-659 (2000); *Commonwealth* v. *Hunter*, 416 Mass. 831, 836 (1994), *S.C.*, 427 Mass. 651 (1998). This questioning was error. However, given our disposition of the ineffective assistance of counsel issue above, we need not discuss or decide whether the error was harmless beyond a reasonable doubt.

A defendant may not be questioned about his or her postarrest silence. That rule is one of long standing. See *Commonwealth* v. *Peixoto, supra* at 659; *Commonwealth* v. *Cole*, 380 Mass. 30, 42 n.16 (1980); *Commonwealth* v. *Haas*, 373 Mass. 545, 561 (1977), *S.C.*, 398 Mass. 806 (1986); *Commonwealth* v. *Burke*, 339 Mass. 521, 531-533 (1959), rev'd on other grounds, *Commonwealth* v. *Beldotti*, 409 Mass. 553 (1991); *Commonwealth* v. *Sazama*, 339 Mass. 154, 157-158 (1959); *Commonwealth* v. *King*, 34 Mass. App. Ct. 466, 469 (1993). Prosecutors may not introduce evidence of a defendant's postarrest silence except in the context of the entire conversation and for the limited purpose of clarifying why the interview ended abruptly. See *Commonwealth* v. *Martinez*, 431 Mass. 168,

184 (2000); *Commonwealth* v. *Habarek*, 402 Mass. 105, 110 (1988).

4. *Conclusion.* We hold that the defendant was denied effective assistance of counsel. We reverse the judgment of the Superior Court, set aside the verdict, and remand the case for a new trial.

*So ordered.*