# United States Court of Appeals
## For the First Circuit

No. 08-1094

DIANE E. FARLEY,

Petitioner, Appellant,

v.

LYNN BISSONNETTE, SUPERINTENDENT,
MASSACHUSETTS CORRECTIONAL INSTITUTION, FRAMINGHAM,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge,
and Schwarzer,[*] District Judge.

Brownlow M. Speer, Committee For Public Counsel Services, Public Defender Division, for appellant.
Randall E. Ravitz, Assistant Attorney General, Criminal Bureau, with whom Martha Coakley, Attorney General, was on brief for appellee.

October 8, 2008

---

[*]Of the Northern District of California, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>. Diane Farley spent a portion of the evening of April 23, 1993, at the home of Sarah Ann Marsceill in Dedham, Massachusetts. The two went out together, returning to Marsceill's home in the early morning hours of April 24. Farley remained there until around 9:30 a.m. Driven away by a friend, Farley was said to have had a dark, wet stain on her trousers, for which she offered inconsistent explanations, and to have had a roll of twenty dollar bills even though she had earlier said she had no money. Later that afternoon, Marsceill was found dead in her bedroom, having been stabbed to death in a bloody fashion.

Farley was tried and convicted of first degree murder. There was some forensic evidence against Farley,[1] enhanced by her observed presence at the scene, arguable evidence of a quarrel between the two women, and various inconsistent statements and positions offered by Farley. An initial conviction was reversed for ineffective assistance of counsel, <u>Commonwealth</u> v. <u>Farley</u> (<u>Farley I</u>), 732 N.E.2d 893 (Mass. 2000), but her conviction after a retrial was affirmed. <u>Commonwealth</u> v. <u>Farley</u> (<u>Farley II</u>), 824 N.E.2d 797 (Mass. 2005).

---

[1]Over and above the supposed stain, blood consistent with Farley's was found on Marsceill's body, under one of Marsceill's fingernails, and on the bedspread. Both Farley's and Marsceill's blood were found on a bathrobe in the living room. There was also forensic evidence linking May to the scene but he admitted having been there on an earlier evening, and Farley never claimed that she had seen May at Marsceill's house the night of the murder.

Farley then sought habeas relief in the district court. Although the district court denied relief, Farley v. Bissonnette, No. 06-10672-GAO, 2007 WL 4377608 (D. Mass. Dec. 11, 2007), it granted a certificate of appealability as to two questions. The first (we set forth the second one later in this opinion) was whether "the trial judge's instruction to the jury that the prosecution 'does not have the burden of proving that no one else may have committed the murder' [was] an error that was contrary to clearly established Supreme Court precedent as stated in In re Winship, 397 U.S. 358 (1970)." Farley v. Bissonnette, No. 06-10672, 2008 WL 227870 (D. Mass. Jan. 28, 2008).

The context for the instruction was Farley's contention at trial that the murder had been committed not by Farley but by one of two other named individuals: Michael May, who admitted to a brief association with Marsceill, or Ronald James, said to be a drug dealer. Farley did not testify at trial, but the jury heard government evidence that she had initially told police and testified before the grand jury that she left while James and Marsceill were arguing and then later changed her explanation to a claim that James had stabbed both women.[2] The Commonwealth called

---

[2]The Commonwealth read portions of Farley's testimony from the first trial and before the grand jury into the record and played an audiotape of Farley's interview at the police station; in addition, the investigating officer testified about Farley's various statements. Farley II, 824 N.E.2d at 802 n.8.

both James and May as witnesses; both said that they had not even been at the Marsceill house on the night of the murder.

The trial judge, at the Commonwealth's request and over Farley's objection, told the jury that Farley was presumed innocent and the Commonwealth had the burden of proving her guilty of every element of the crime beyond a reasonable doubt, but that "[t]he Commonwealth does not have the burden of proving that no one else may have committed the murder." Farley II, 824 N.E.2d at 802 n.10. Farley says that this was error because her defense--that May or James had committed the murder--meant that this premise had to be disproved in order to find her guilty and so was part of the prosecution's burden.

Because this claim (and the one that follows) were resolved on the merits by the state court, our review is governed by the standard set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA), namely, we ask whether the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d) (2006). In this instance, this required deference does not matter: the instruction at issue does not contravene Winship.

The jury was told repeatedly that the Commonwealth had to prove beyond a reasonable doubt that Farley had committed the murder, whose elements under Massachusetts law were defined in the

-4-

instructions.[3] The proposition that Farley says the government had to prove--that neither May nor James had committed the murder--is not an <u>element</u> of the crime (such as "premeditation"); it is a factual assertion that might, or might not, be relevant in the jury's evaluation of the evidence against Farley.

Farley argues that if May or James murdered Marsceill, then this would automatically exculpate Farley; but this is not necessarily so since she could also have aided or participated. And even in a case where in context it had to be so, the prosecution would be perfectly free to concentrate on the evidence that implicated Farley without in any way countering evidence relied on by Farley to show that someone else had motive, opportunity, access and so forth.

Thus, where the defense attempts to cast the blame on someone other than the defendant, it is not unusual for the court to remind the jury that the government's burden is to show that the defendant is guilty--not that the other person whom the defendant seeks to blame is innocent. In <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307 (1979), the Court itself observed that <u>Winship</u> does not place "the prosecution . . . under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." <u>Id.</u> at

---

[3] The challenged instruction appeared between two sentences stating that the prosecution had the burden of proof beyond a reasonable doubt as to each element of the crime, a burden that was repeated at least ten additional times in the instruction.

326.  The contested instruction in this case did no more than repeat <u>Jackson</u>'s caveat.

Every instruction must be judged on its own terms, including the language used and the context of facts and arguments offered in the case.  <u>See</u> <u>Victor</u> v. <u>Nebraska</u>, 511 U.S. 1, 6 (1994) (the relevant question is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the <u>Winship</u> standard").  Perhaps some rare case might arise in which a warning by the judge as to what the government did not have to prove might confuse the situation or lead the jury to believe that a legitimate argument by the defense was logically irrelevant.  Taking the instructions as a whole, <u>see</u> <u>Estelle</u> v. <u>McGuire</u>, 502 U.S. 62, 72 (1991), nothing of the sort occurred in this case.

Farley's second claim is that the trial court violated her Sixth Amendment Confrontation Clause right under <u>Delaware</u> v. <u>Van Arsdall</u>, 475 U.S. 673 (1986), by limiting her cross-examination of James.  This is reflected in the district court's second certified issue, namely, whether "the state court's decision that the trial judge's limitation of the petitioner's cross-examination of Ronald James, though error, was harmless beyond a reasonable doubt [was] an unreasonable application of clearly established Supreme Court precedent, namely, <u>Delaware</u> v. <u>Van Arsdall</u>, 475 U.S. 673 (1986)."  <u>Farley</u>, 2008 WL 227870, at *1.

-6-

James had testified that he did not know May. On cross-examination, Farley wanted to show this testimony was false by questioning James about his relationship to Sarah Zene, a former drug runner who was going to testify that she had delivered drugs for James to May and that the two knew one another. The trial judge allowed James to invoke his Fifth Amendment privilege to block this line of questioning.

The Supreme Judicial Court held that the trial judge should have allowed the questioning because in its view James had waived the privilege by testimony he had given in the first trial; but, the SJC found the error harmless beyond a reasonable doubt under Chapman v. California, 386 U.S. 18 (1967), because Zene herself testified in the second trial that she had delivered drugs for James to May and that the two knew one another. The SJC said that the cross-examination would at best have been cumulative.

Again, the SJC gets deference under AEDPA so, strictly speaking, the question is not our own judgment about Chapman and Van Arsdall but the reasonableness of the SJC's application, see Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003); Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir.), cert. denied, 534 U.S. 925 (2001), substituting a more deferential form of harmless error review on habeas. See generally Fry v. Pliler, 127 S. Ct. 2321, 2327-28 (2007); Brecht v. Abrahamson, 507 U.S. 619 (1993). In all events, we would reach the same decision ourselves.

-7-

Farley does not claim that the cross-examination was designed to do anything other than attack James' credibility. His credibility was relevant since Farley--seeking to suggest that James might have committed the crime--had to challenge his denial of involvement. But Farley's counsel was able to raise serious questions about James' credibility on cross-examination through evidence of his prior criminal conviction and prior inconsistent statements. When Zene then testified that James did know May, she added a further contradiction and supplied the information that Farley had wanted to elicit on cross-examination.

Doubtless it is often best to have the witness being impeached made on cross-examination himself to admit he was lying; but (as we have explained) James' general credibility was amply put in question. It is pure speculation to think that he would have admitted to knowing May after flatly denying it; and, if he had, it would have been an admission to a fact to which Zene herself testified. There is no reason whatever to think that cross-examination would have changed the result.

In Van Arsdall, the Court mentioned a number of factors bearing on an assessment of harmlessness, including the importance of the testimony foreclosed, whether it was cumulative, the extent of cross-examination otherwise permitted, "and, of course, the overall strength of the prosecution's case." 475 U.S. at 684. Here, the excluded cross-examination was on a collateral issue--

that is, for impeachment and not the merits--and largely cumulative; it is worth adding that the prosecution's case was strong.

Although no eye witness saw Farley commit the murder, she alone had been observed at the scene, there was arguable evidence of a quarrel between the women, both the dark patch and the mingled blood samples linked Farley to the crime, and her inconsistent statements enhanced suspicion. By contrast, nothing directly linked James to the crime beyond Farley's prior claims that James had stabbed both women--a claim presented to the jury only through her prior testimony and statements to the police. See note 2, above. The chance of shifting blame to James was slight indeed.

The denial of the writ is <u>affirmed</u>.